## Tompkins v. Tompkins

*Archie C. Voorhies, Enoch C. Filer*, for libellant.
*Paul F. Koesling*, for respondent.

LAUB, J., February 7, 1946.—This is an uncontested divorce case based upon indignities to the person of libellant, an officer in the United States air forces. After hearing, the master recommended that the decree be refused.

On May 29, 1945, libellant, while on leave in London, England, married respondent, a native of that country. There was a happy honeymoon of seven days during which there was no portent of marital discord. Libellant then returned to his station in Italy and thereafter received two letters from the respondent in which there was nothing of a disturbing nature. The third letter, which he received June 20, 1945, indicated that respondent was unhappy about the marriage and re-

ferred cryptically to another letter which libellant had not received. He then obtained permission to return to England and he arrived there June 24, 1945.

Upon his arrival in England, libellant found his wife to be cold and distant. They had some discussion relative to support and money matters but it was not until that night that libellant discovered the real reason for respondent's indifference to him. It was then that she told him that she did not love him and never had; that their marriage was a mistake and that she loved instead a man named Cyril whom she had known previously. She requested libellant to secure a divorce and stated that if he did not do so she would live with Cyril anyway.

This was the substance of libellant's conversation with respondent during his stay in England June 24th, 25th and 26th. During that time libellant slept with respondent the first night without having relations with her. On the 25th she requested him to find other quarters which he did. After fruitless attempts to bring about a change in respondent's attitude during his conversations with her on the 25th and 26th, libellant returned to Italy. He has neither seen nor spoken to his wife since that date.

Upon his second return to Italy after the final separation, libellant there found the letter to which respondent had previously referred. This letter, which was offered in evidence, is a substantial reiteration of that which respondent told libellant while in England.

Libellant, with some degree of persuasive force, urges that this conduct on the part of respondent entitles him to a divorce upon the grounds of indignities to the person. Certainly, she has struck home to the very heart of the marriage by manifesting a lack of love and affection. While many marriages have endured without these qualities, their continued existence is due only to the Spartan determination of the parties rather than affection for the partner in the

marriage state. Where unhappiness in marriage is softened by patient accommodation to circumstances and the marriage is sustained by a high personal regard for moral and social duty, we may not have the ideal institution contemplated by the holy vows of ritualistic union but the compulsion of the law is not required for its continued existence. However, where the law is invoked for the severance of the marital tie we can only look to the law itself for those causes which will permit the entry of a decree of divorce. Regardless of the apparent inconsistency in compelling a continuance of a marriage which will never in fact be real, care must be taken to observe the policy of the Commonwealth as evidenced by the voice of its legislature. This policy is not altered or modified by the diversity of citizenship between the parties.

Section (f) of paragraph 10 of The Divorce Law of May 2, 1929, P. L. 1237, as amended by the Act of March 19, 1943, P. L. 21, permits us to enter a decree in divorce where respondent shall "have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome". We must therefore consider first whether or not respondent's conduct toward libellant constitutes an indignity within the meaning of the law.

The general scope of such acts as will constitute indignities in this Commonwealth has been reiterated many times by our courts. In general they may consist in "vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement": Grasso v. Grasso, 143 Pa. Superior Ct. 293, 305. But this is by no means a limiting classification. For any act of like character and having the same intendment may be considered as an indignity, depending upon the circumstances, the position in life of the parties, their characters and dispositions: Dearth v. Dearth, 141 Pa. Superior Ct. 344.

Careful consideration of respondent's conduct toward libellant leaves us with the conviction that her denial of love for him and her protestations of affection for another might well be regarded as an indignity. It is not the loss of affection, or the lack of it, which would amount to such, but the communication of that loss or lack together with the circumstances surrounding such communication. But this indignity, if it be an indignity, was but a single act of the respondent. Although her repeated statements over a period of three days have been urged as a series of indignities, it must be remembered that these statements were responsive to libellant's requests that she reconsider her determination to terminate the marriage. Under the circumstances it was but a single, protracted but segmented act and not a studied course of conduct.

Our law prescribes that actionable indignities must be so repeated and continuous as to constitute a course of conduct which renders the complaining party's condition intolerable and life itself a burden: Dearth v. Dearth, supra. We do not apprehend that a single indignity, or even a series of indignities over a period of three days, no more severe or intolerable than the one at bar, can be recognized as sufficient grounds for divorce under our law.

It is urged by libellant that the equities lie with him and that a refusal of divorce would work injustice. Our law is formed for the great average. It cannot be so extensive as to reach into every corner of human activity nor can we expect a legislature composed of humans to predict with any degree of accuracy the vagaries of mortal mind. The efficacy of law lies, not in its infallibility in particular cases, but in its certainty in all.

We conclude that the recommendation of the master is correct.

And now, to wit, February 7, 1946, a decree of divorce is refused and the libel is dismissed at the cost of libellant.